NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 31

No. 25-AP-322

| | |
|---|---|
| Justin Tiedemann | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| | |
| Bernard Wheeler & Catherine Wheeler | May Term, 2026 |

Alexander N. Burke, J.

Harry R. Ryan of Facey Goss & McPhee P.C., Rutland, for Plaintiff-Appellant.

Susan J. Flynn and Kristin C. Wright of Law Offices of Susan J. Flynn, PLC, Burlington, for Defendants-Appellees.


PRESENT: Reiber, C.J., Eaton, Waples, Nolan and Drescher, JJ.


¶ 1. **EATON, J.** Plaintiff appeals from the trial court's denial of a post-trial motion in this negligence case. We affirm.

## I. Procedural History

¶ 2. Plaintiff worked as a courier for FedEx Express, and he was injured while delivering a package to defendants Wheelers' home. Plaintiff sued the Wheelers, alleging in relevant part that he was injured due to their negligence. A jury trial was held in April 2025. The jury found in plaintiff's favor on his negligence claim with plaintiff 40% at fault and the Wheelers 60% at fault. The jury awarded $59,372 in economic damages for medical expenses and lost wages from the date of injury (which totaled $89,607.77 including prejudgment interest), and $5000 in

noneconomic damages. Plaintiff's 60% share of this award, as well as his award of $2,475.33 in costs, resulted in a total judgment in plaintiff's favor of $59,239.99. Plaintiff filed several post-verdict motions, including a motion for additur or a new trial under Vermont Rule of Civil Procedure 59.

¶ 3. In ruling on plaintiff's Rule 59 motion, the court considered the evidence in the light most favorable to the verdict. See Gregory v. Vt. Traveler, Inc., 140 Vt. 119, 121, 435 A.2d 955, 956 (1981) ("Granting a motion for a new trial is within the discretion of the trial court, and the evidence must be considered in the light most favorable to the verdict."). Applying this standard, the court recounted the following. On March 3, 2021, plaintiff delivered a package to the Wheeler residence. Plaintiff had delivered packages to the Wheeler residence before and left the packages outside near a grill next to the garage. On the morning in question, Mr. Wheeler cleared snow from the walkway in front of the grill. The Wheelers reside in a snowy and windy area, and sometimes the wind blows snow back across areas that have been cleared. That morning, there was a white board on the ground in front of the grill. The board blended in with the snow, but the board was high enough that it would have been noticeably different than the surrounding area. Mr. Wheeler did not see the board when he cleared the walkway.

¶ 4. Plaintiff arrived at the Wheeler home around 11 a.m. He walked toward the grill area holding a package in both hands. Plaintiff was taught to look around a delivery area for debris. Upon reaching the grill area, plaintiff stepped on the white board and fell. Plaintiff realized the cause of his fall after looking at pictures of the site. Plaintiff broke his ankle and rolled around on the ground yelling in pain. Although Mrs. Wheeler was home, she did not hear or see plaintiff fall. Plaintiff returned to his truck and drove back to FedEx.

¶ 5. Plaintiff's ankle surgery was straightforward and included installing stabilizing hardware. The hardware was later removed in a second surgery. While damaged cartilage can result in arthritis later in life, there were no signs of damage to plaintiff's cartilage. Plaintiff was

2

expected to recover completely from his injury. During the recovery period, plaintiff experienced pain and suffering and could not engage in activities he normally enjoyed, such as hiking and snowboarding.

¶ 6. Based on this evidence, the court considered plaintiff's motion for additur or a new trial under Rule 59(a). Rule 59(a) allows the court to grant a new trial:

> for any of the reasons for which new trials . . . have heretofore been granted . . . . A new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court deems . . . reasonable.

To set aside the jury's verdict, plaintiff needed to show that the verdict was "clearly erroneous, or that the jury disregarded the reasonable and substantial import of the evidence, or found against [him] because of passion, prejudice, or some misconception of the matter." Newkirk v. Towsley, 134 Vt. 237, 238, 357 A.2d 117, 118 (1976). The court concluded that plaintiff failed to satisfy this standard here.

¶ 7. Plaintiff argued that the fair market value of his noneconomic damages exceeded $5000 and therefore the jury's verdict must have been the result of a compromise. "A compromised verdict results when some jurors surrender conscientious convictions on one issue in return for a similar surrender by other jurors on another issue." Fournier v. Loiselle's Est., 132 Vt. 601, 602, 326 A.2d 155, 156 (1974). "The threshold determination in considering whether a verdict has been compromised . . . is whether the jury could reasonably have calculated the damages awarded on the evidence presented," and the court "will not interfere unless it appears that the jury's determination is so small that it plainly indicates the award was the product of prejudice or other misguidance which undermines its validity as a verdict." Id. (quotation omitted).

¶ 8. In considering this question, the court discussed Smedberg v. Detlef's Custodial Serv., Inc., 2007 VT 99, 182 Vt. 349, 940 A.2d 674. In Smedberg, the plaintiff "suffered cervical spine injuries in a slip and fall at her workplace," which "ultimately required her to undergo spinal

fusion surgery." Id. ¶¶ 1-2. The jury found the plaintiff's employer liable for negligence, with the plaintiff 50% at fault. Id. ¶ 3. It awarded the plaintiff approximately $72,000 in medical damages and a percentage of the lost wages she requested "but awarded no damages for past or future pain and suffering or loss of enjoyment of life." Id.

¶ 9. The plaintiff moved for a new trial on damages, arguing that "the jury had no basis to find that she did not endure any pain or suffering as a result of the slip and fall and ensuing spinal surgery." Id. ¶ 6. This Court agreed with the plaintiff, concluding that there was "no plausible explanation for a jury verdict finding [the employer] liable for back and neck injuries" and "medical expenses, including the cost of invasive surgery, but awarding nothing for past or future pain and suffering." Id. ¶ 9. We found "reasonable and substantial evidence at trial that, as a result of her back and neck injuries, [the] plaintiff had surgery and suffered pain in the past, and that she would suffer pain in the future." Id. This included the "plaintiff's own testimony about her pain" and "the testimony of two medical witnesses"—a pain-management specialist and the plaintiff's neurosurgeon—who testified to the pain the plaintiff experienced (and would experience for the rest of her life), as well as treatments they employed to alleviate her pain. Id. ¶¶ 10-11. We concluded that an award of noneconomic damages was warranted on this record and that the plaintiff was entitled to a new trial on damages because "the jury ha[d] evidently disregarded the reasonable and substantial evidence, or found against [the plaintiff] through passion, prejudice, or some misconstruction of the matter." Id. ¶ 12 (quotation omitted).

¶ 10. The trial court emphasized that, unlike in Smedberg, the jury here awarded plaintiff $5000 in noneconomic damages. The court considered this award consistent with testimony from plaintiff and several of his friends regarding the pain he suffered during his recovery. There was competing testimony about plaintiff's future pain and suffering. The Wheelers' expert, an orthopedic surgeon, testified that the surgery was straightforward, as was the hardware removal surgery, and he expected plaintiff to recover completely. The expert saw no signs of ongoing

4

issues in the records he reviewed. Plaintiff's expert, a physiatrist, testified that plaintiff suffered a loss of range of motion to his ankle, which was a permanent condition, and that he was likely to develop arthritis as a result. The court emphasized that it was the jury's role to evaluate the testimony and it "[would] not second-guess the jury's determination of credibility." State v. Hinchliffe, 2009 VT 111, ¶ 22, 186 Vt. 487, 987 A.2d 988.

¶ 11. Plaintiff raised several additional arguments in support of his contention that the jury reached a compromise verdict. He cited the jury's request, during their deliberations, to "see" the testimony of two witnesses, and he noted that the jury never followed up on this request after the court informed them that only the audio-recorded testimony could be replayed. Plaintiff argued that this showed discord. The court disagreed, explaining that it could not infer any fact or reason for the jury's failure to respond to the court's response about replaying the testimony. Plaintiff also cited a juror's request to make a phone call to arrange for childcare. The court found that this phone call did not indicate discord or compromise. The court considered and rejected other arguments plaintiff raised in this vein, including his assertion that the jury's question about the jury instructions indicated discord or compromise. As the court did not find that the verdict reached by the jury was the result of compromise, it found no grounds for additur. See V.R.C.P. 59(a) ("A new trial shall not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an addition to the verdict of such amount as the court deems . . . reasonable.").

¶ 12. Plaintiff also argued that he was entitled to a new trial because the court erred in instructing the jury on premises liability. Plaintiff quoted a portion of the court's instructions and argued that it was inconsistent with the Restatement (Second) of Torts § 343 (1965). The court found that plaintiff failed to acknowledge the court's full instructions on this issue, and it concluded that its instructions accurately stated the law and were not confusing.

5

¶ 13.    Plaintiff further asserted that the court's "instruction on insurance may also have contributed to the jury's confusion and division." The instruction told the jury not to speculate about whether the parties had insurance to cover any damages or whether plaintiff was entitled to workers' compensation insurance coverage. The jury was instructed that their "job is to award the amount of damages that you determine has been established by all the evidence presented to you." According to plaintiff, this charge, "without more, left the jury to assume . . . that [he] somehow had insurance coverage for his 'damages' and could collect from that insurance." Plaintiff argued that the court should have given his proposed instruction which acknowledged plaintiff's receipt of workers' compensation benefits and informed the jury it should not consider that information in its deliberations "because plaintiff has a legal obligation to repay all such workers' compensation benefits paid to him from any award." Plaintiff further complained that the Wheelers' counsel improperly referenced the standard for receiving workers' compensation benefits in her closing argument.

¶ 14.    The court rejected these arguments. It explained that it would have been improper to instruct the jury about plaintiff's receipt of workers' compensation benefits. The general rule is that the jury should not hear about insurance, and no exception to that rule applied here. See Hardy v. Berisha, 144 Vt. 130, 135, 474 A.2d 93, 96 (1984) (explaining that, with exceptions not relevant here, Court "has traditionally held that the deliberate injection of insurance into a case in order to prejudice a jury and benefit a litigant is normally reversible error since the existence of insurance is an immaterial fact," and "[t]his rule applies with equal force to the introduction of the absence of insurance coverage" (quotation and alterations omitted)). The court added that defense counsel's reference to the standard in a workers' compensation case in her closing argument, while ill-advised, did not warrant a new trial as it was so oblique that any prejudicial effect was minimal. See Joslin v. Griffith, 125 Vt. 104, 106-07, 211 A.2d 249, 251 (1965) (stating that mistrial not

6

warranted when reference to insurance is "oblique or obscure, making little impression on the jury, or when the posture of the case makes it apparent that the prejudicial effect will be minimal").

¶ 15.   Plaintiff moved for reconsideration, reiterating his assertion about a compromised verdict.  The court found no basis to disturb its earlier ruling and denied the motion.  This appeal followed.

## II.  Arguments on Appeal

¶ 16.   We review the court's denial of plaintiff's motion for a new trial "for abuse of discretion," taking the "evidence in the light most favorable to the nonmoving party and disregard[ing] the effect of modifying evidence."  Shahi v. Madden, 2008 VT 25, ¶ 14, 183 Vt. 320, 949 A.2d 1022.  The trial court's decision is given "all possible presumptive support, similar to the support the trial court owes to a jury verdict."  Irving v. Agency of Transp., 172 Vt. 527, 528, 768 A.2d 1286, 1289 (2001) (mem.) (quotation omitted).  To the extent plaintiff argues that a different standard of review applies, we reject that argument.

¶ 17.   Plaintiff argues that the trial court failed to apply the appropriate standard in considering his motion.  He contends that the record "shows only that the court believed it would not be overturned on appeal . . . by distinguishing Smedberg" on the basis that it involved a different set of facts.  These assertions are unsupported by the record.  As set forth above, the court applied the appropriate standard and considered if "the jury could reasonably have calculated the damages awarded on the evidence presented."  Fournier, 132 Vt. at 602, 326 A.2d at 156.  The court explained the basis for its conclusion and why it rejected the various arguments advanced by plaintiff.

¶ 18.   We agree with the trial court that Smedberg is distinguishable.  The jury there awarded the plaintiff economic damages but awarded no noneconomic damages despite testimony from medical professionals concerning her ongoing pain.  Other courts have reached similar conclusions when a plaintiff recovers economic damages but is awarded no noneconomic

7

damages. See, e.g., <u>Brooks v. Brattleboro Mem'l Hosp.</u>, 958 F.2d 525, 530 (2d Cir. 1992) (concluding that where jury found defendants' "negligence resulted in [plaintiff] not receiving treatment for a deadly infection for approximately two weeks, and that this negligence proximately caused all of her medical expenses," it was "irreconcilably inconsistent for the jury to have awarded zero damages for her contemporaneous, undisputed pain and suffering" (emphasis omitted)); see also <u>id.</u> (citing cases where new trial was similarly warranted based on absence of any award of noneconomic damages). As set forth above, the jury here did award plaintiff noneconomic damages, and we cannot conclude that its "determination is so small that it plainly indicates the award was the product of prejudice or other misguidance which undermines its validity as a verdict." <u>Fournier</u>, 132 Vt. at 602, 326 A.2d at 156 (quotation omitted).

¶ 19. Essentially, plaintiff disagrees with the way in which the jury evaluated the evidence and with the court's recitation of the evidence in the light most favorable to the verdict. He maintains that the court "discount[ed] and completely ignore[d]" his evidence regarding his noneconomic damages, such as testimony that he was "profoundly depressed," suffered "excruciating" pain, and that his "recovery period" lasted for a year. In support of this argument, he cites to evidence he presented at trial. This includes testimony from a friend with whom he stayed for approximately a month after his first surgery and a second friend who visited plaintiff during this time. He also cites to treatment notes related to his progress in physical therapy in the six months after his surgery. These notes reported, among other things, plaintiff's statement that five months out from the surgery, he could engage in activities on his feet for three hours before he started to feel pain, and that six months out, he was making "some progress" with physical therapy and "overall doing well." Plaintiff reported that he still "gets soreness" and has "tenderness along the scar." As support for his assertion that he suffered pain for a year until his second surgery, plaintiff cites the testimony of the second friend referenced above. This friend lived in New Jersey and visited plaintiff for a short time right after the accident and then saw him several

8

other times in the year leading up to his second surgery. She testified that plaintiff was in "excruciating pain" during the entire year before his second surgery.

¶ 20. As the trial court recognized, it is for the jury as the factfinder to weigh the evidence and assess the credibility of witnesses, and we view the evidence in the light most favorable to the verdict, disregarding modifying evidence. The jury was not required to credit the testimony of plaintiff or his witnesses as to the extent of plaintiff's pain and suffering. See, e.g., B & F Land Dev., LLC v. Steinfeld, 2008 VT 109, ¶ 10, 184 Vt. 624, 966 A.2d 127 (mem.) ("It is black-letter law that assessing witness credibility and weighing the evidence are the unique province of the jury."). As the Wheelers point out, moreover, these witnesses, who were plaintiff's close friends, did not live in the same household with plaintiff (aside from right after the injury) and saw him only intermittently. The jury could reasonably conclude based on the evidence that an award of $5000 in noneconomic damages was appropriate. See Quesnel v. Raleigh, 128 Vt. 95, 102, 258 A.2d 840, 845 (1969) (recognizing that "in actions for personal injuries, pain, suffering and permanent impairment are elements of damage which, of necessity, are entrusted to the discretionary judgment of the jury," and "[i]ndependent of compromise, a verdict for substantially less than the damage sought may reflect a rational rejection of some items and approval of others").

¶ 21. Plaintiff next asserts that he was entitled to a new trial because the court erred in instructing the jury as to what he must prove to establish his negligence claim against the Wheelers. As explained in greater detail below, plaintiff contends that the wording of the instruction should have more closely tracked the language of the Restatement (Second) of Torts § 343.

¶ 22. Before discussing the instructions specifically, we emphasize that plaintiff fails to show any harm from his claimed error. Even assuming arguendo that the court erred by not adopting plaintiff's preferred instruction, plaintiff obtained the result he sought. The jury here found the Wheelers liable for negligence. While plaintiff appears to suggest that the instruction somehow affected the jury's damages award (but only as to noneconomic damages), he did not

9

challenge the jury instructions on damages or on comparative negligence either below or on appeal. "We presume that jurors follow the law as set forth in the instructions given to them," moreover, and reject plaintiff's suggestion that the jury "ignored" the damages instruction. State v. Webster, 2017 VT 98, ¶ 22, 206 Vt. 178, 179 A.3d 149. We reject plaintiff's challenge to the liability instruction based on his failure to show harm alone.

¶ 23. Even considering the precise language used in the jury instructions, we discern no error. The court provided a lengthy instruction on negligence. The instructions stated in part:

> [Plaintiff] alleges that the Defendants, the Wheelers, failed to maintain their property in a reasonably safe condition, which caused [plaintiff] to fall and suffer injuries. Under Vermont law, the Wheelers do not have a legal duty to strictly guarantee the safety of all people on their property, nor are they automatically liable simply because someone was injured by a piece of debris or a dangerous condition on their property. Instead, [plaintiff] must establish that the Wheelers were negligent.
>
> * * * *
>
> [Plaintiff] . . . was an invitee and lawful entrant on the Wheelers' property. As such, the Wheelers owed [plaintiff] a duty to use reasonable care to keep their premises in a safe and suitable condition, so that [he] was not unnecessarily or unreasonably exposed to a dangerous or unsafe condition.
>
> [Plaintiff] claims that the Wheelers were negligent by failing to clear and maintain their property in a reasonably safe condition for walking and making a delivery of a package. In order to prove this claim, [plaintiff] must prove to you, by a preponderance of the evidence, each of the following elements:
>
> 1. On the date and time of the alleged accident, an unreasonably dangerous or unsafe condition existed on the Wheelers' property;
>
> 2. The Wheelers knew or should have known that such an unreasonably dangerous or unsafe condition existed;
>
> 3. The Wheelers failed to exercise reasonable care to protect [plaintiff] from the unreasonably dangerous or unsafe condition, or to give a warning about the condition; and
>
> 4. The unreasonably dangerous or unsafe condition was a proximate cause of [plaintiff's] injuries.

10

¶ 24.    The court then described each element in greater detail.  With respect to the second element, the court instructed the jury:

> [Y]ou must determine whether the Wheelers knew or should have known of the allegedly dangerous or unsafe condition, or the risk of that condition, based on the totality of the circumstances that existed at the time [plaintiff] was injured.
>
>    There is no amount of time in which a dangerous condition or risk must exist before the property owner should discover it and take action.  <u>Vermont law requires that a property owner exercise reasonable care to discover the dangerous condition</u>.  A property owner has a duty to take action to eliminate a risk of harm or make a dangerous condition safe when the condition or risk is foreseen by the owner, or where the owner could have foreseen an unreasonable risk of harm to invitees, if the owner had conducted herself or himself as a reasonably prudent property owner would have.

(Emphasis added.)

¶ 25.    Plaintiff argued below that the language set forth in the beginning of the court's instruction on negligence—that "the Wheelers knew or should have known that such an unreasonably dangerous or [un]safe condition existed"—should instead track the language of the Restatement (Second) of Torts § 343, which used the words "knows or by the exercise of reasonable care would discover [the dangerous condition]."[1]  The Wheelers pointed out that this language was used in describing the elements of negligence more specifically, as set forth above. Plaintiff responded that "[i]t should be in both places."

---

[1]  Section 343 of the Restatement (Second) of Torts provides that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

11

¶ 26. The trial court rejected plaintiff's argument, explaining that plaintiff failed to view the jury instructions as a whole. The court explained that it specifically instructed the jury that Vermont law requires a property owner to exercise reasonable care to discover a dangerous condition. The court found that its instructions accurately stated the law and were not confusing.

¶ 27. Plaintiff essentially reiterates the same argument on appeal. He contends that the court should have used the exact language from § 343 of the Restatement and instructed the jury that "a property owner is liable for physical harm where the possessor . . . 'knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees.' " Barton v. Wharf Lane Hous. LP, No. 23-AP-177, 2023 WL 8827310, at *2 (Vt. Dec. 21, 2023) (unpub. mem.), https://www.vtcourts.gov/sites/default/files/documents/eo23-177.pdf (quoting Restatement (Second) of Torts § 343 (1965)). He contends that the court's instruction "confused the jury."[2]

¶ 28. We discern no error in the court's instruction. As we have explained:

> The propriety of an instruction is to be determined from the charge as a whole with a view to its general content, not merely from isolated segments. While the trial court enjoys broad discretion over the extent to which it elaborates on the points charged, still the charge as a whole must impart the spirit of the law so that the jury is not misled.

Barber v. LaFromboise, 2006 VT 77, ¶ 14, 180 Vt. 150, 908 A.2d 436 (citation and quotation omitted). The court was not required to adopt the language of the Restatement verbatim as plaintiff

---

[2] Plaintiff also asserts that the trial court's more detailed discussion of the elements of this duty was confusing, but he fails to show that he timely objected to the instructions on this basis below, and we therefore do not address it. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."); In re S.B.L., 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988) (explaining that appellant bears burden of demonstrating how trial court erred warranting reversal, and Supreme Court will not comb record searching for error); see also V.R.A.P. 28(a)(4) (providing that appellant's brief should explain issues presented, how they were preserved, and appellant's contentions and reasoning).

appears to suggest. Its charge reflected the standard set forth in the Restatement and, putting aside plaintiff's failure to show any harm, the instructions were not misleading.

¶ 29.   Plaintiff also reiterates his assertion that there was evidence here of "compromise and misunderstanding," citing the same circumstances considered and rejected by the trial court. This includes the jury's request to see the testimony of several witnesses and their failure to respond to the court's question of whether they wanted this evidence replayed; the jury's question about one of the instructions; a juror's request to make childcare arrangements; and his assertion that the court should have instructed the jury about the workers' compensation benefits he received. The court considered and rejected these arguments as insufficient to show a compromised verdict, and plaintiff fails to show that the court abused its discretion in doing so.

¶ 30.   With respect to the jury's question about the requirement of unanimity, referenced by the dissent, the record indicates the following. See post, ¶ 36. During its deliberations, the jury sent a note to the court, which stated: "If we do not all agree on the four questions on page [six of the jury instructions], do we then vote no on question one on page [one]?" Page six of the instructions identified the elements of plaintiff's claim that the Wheelers were "negligent by failing to clear and maintain their property in a reasonably safe condition for walking and making a delivery of a package." "Page [one]" referred to the special verdict form, which asked in relevant part for a yes or no answer to the question: "Do you find that Plaintiff Justin Tiedemann has proven by a preponderance of the evidence the claim for negligence against Defendants Catherine and Bernard Wheeler?"

¶ 31.   In response to the jury's note, the parties discussed the issue and the court proposed, with the parties' agreement, to reiterate to the jury that its decision must be unanimous. No party requested that the special jury form should or must include all of the elements of plaintiff's negligence claim rather than the ultimate question of liability for negligence. The court instructed the jury that, to find the Wheelers liable, it must agree that all of the elements of negligence were

13

satisfied, and we presume that the jury followed the court's instructions. Webster, 2017 VT 98, ¶ 22. The jury in fact found the Wheelers liable for negligence.

¶ 32. During the parties' discussion about the note, plaintiff did not ask the court to revise the jury instructions. Contra post, ¶ 38. While plaintiff's counsel reminded the court of his previous objection regarding the jury instruction, he raised no objection when the court stated that it would not be revisiting the instructions. At that point, the jury instructions had been delivered, and the jury was in the midst of its deliberations. As discussed above, the court's instructions were consistent with § 343 of the Restatement (Second) of Torts. Plaintiff did not object to the proposed instructions below with respect to the more detailed description of the elements of negligence or otherwise argue that the instructions were too lengthy and could not be understood by laypeople.

¶ 33. We explained above that "[t]he threshold determination in considering whether a verdict has been compromised . . . is whether the jury could reasonably have calculated the damages awarded on the evidence presented." Fournier, 132 Vt. at 602, 326 A.2d at 156; supra, ¶ 7. There was conflicting evidence here on noneconomic damages, and it was for the jury, as factfinder, to evaluate the persuasiveness of this evidence.

¶ 34. Finally, plaintiff argues that the court's instruction on insurance confused the jury. He cites questions asked by defense counsel of witnesses at trial but fails to show that he raised any objection to these questions at trial, and he further fails to show that he raised this argument in his initial motion for a new trial. He again refers to the court's instruction about insurance and counsel's statement in closing as to the standard for receiving workers' compensation benefits. Putting aside questions of preservation, the court rejected plaintiff's argument that these factors created juror discord about collateral benefits and contributed to the compromise verdict, and it provided a reasoned basis for its decision. The fact that plaintiff disagrees with the court's conclusion does not demonstrate an abuse of discretion. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571, 980 A.2d 799 (mem.) (explaining that arguments which amount to nothing

14

more than disagreement with court's reasoning and conclusion do not make out case for abuse of discretion).  We discern no error in the court's denial of plaintiff's motion for a new trial.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 35.  **REIBER, C.J., dissenting.**  In my view, confusion arising from the trial court's instructions led to an impermissible compromise verdict.  I therefore respectfully dissent.

¶ 36.  During deliberations, the jury submitted a question indicating uncertainty about how to complete the special verdict form.  The jury stated that it could not agree on the answers to the four questions, or the elements, of a landowner's duty of care discussed on page six of the court's instructions.  The jurors asked whether, if they could not agree on those elements, they should answer "No" to question one on the verdict form.

¶ 37.  Nothing on the special verdict form, however, required separate findings on the four elements referenced in the charge.  Thus, when the court responded only that the jury's decision must be unanimous, it compounded rather than resolved the jurors' confusion.

¶ 38.  In responding to the jury's question, the court declined plaintiff's request to provide a simple explanation of duty based on Restatement (Second) of Torts § 343.[3]  The court thereby

_____

[3] The majority states that plaintiff did not request that the court revise the jury instructions and raised no objection when the court stated it would not revisit the jury instructions.  Ante, ¶ 32. But after the jury's question arose, plaintiff reminded the court that he "wanted to change" one of the four elements and later suggested "giving the charge as it's written in [§ 343] instead of the way [the court] drafted it, because [§ 343] clearly spells out the duty."  The court firmly said it was "not going to change the instruction."  This exchange identified the objectionable issue and gave the court an opportunity to correct course.  See 9 C. Wright & A. Miller, Federal Practice and Procedure § 2554 (3d ed. 2026) ("No particular formality is required of the objection so long as it is clear that the trial judge was informed of possible errors in the charge and was given an opportunity to correct them.").  The court's response demonstrated it understood the specifics of plaintiff's objection and that it would not alter the instruction.

passed on an opportunity to clarify the governing legal standard. Instead, the jury was left with a lengthy and complex exposition describing the various "elements" bearing on defendants' duty of care.

¶ 39. Jury instructions must be phrased in a manner that lay jurors can understand. Where instructions create confusion concerning the applicable standard of care, the error is prejudicial. The jury's question demonstrates precisely such confusion. Under these circumstances, I would hold that § 343 supplied the controlling standard and that the failure to instruct the jury accordingly constituted reversible error.

¶ 40. The sequence of events that followed reinforces this conclusion. Shortly after submitting its question and informing the court that it was divided on liability, the jury returned a verdict finding defendants 60% negligent and awarding plaintiff the full amount of his claimed economic damages, approximately $59,000. Yet the jury awarded only $5000 for pain and suffering.

¶ 41. The jury reached this result less than an hour after raising its question concerning liability. The award was made despite evidence that plaintiff underwent two significant surgeries approximately one year apart and presented corroborated testimony concerning his pain, suffering, and disability.[4]

¶ 42. The verdict bears the hallmarks of compromise. It therefore justifies a new trial.

¶ 43. This Court has recognized that "symptoms of compromise and misunderstanding, coupled with the inadequacy of the compensation for permanent injury, pain and suffering," may

---

[4] The majority states that the evidence on noneconomic damages was disputed and "competing testimony" existed as to plaintiff's future pain and suffering. Ante, ¶ 10. In support, the majority references the testimony from two experts, one who testified about plaintiff's surgeries and expected recovery; and another who testified about plaintiff's loss of range of motion and potential resulting conditions, like arthritis. Id. But this testimony did not contradict the testimony from plaintiff and two witnesses about the pain and suffering he experienced and his lost time from work.

16

warrant setting aside a verdict notwithstanding the trial court's refusal to do so. <u>Kerr v. Rollins</u>, 128 Vt. 507, 513, 266 A.2d 804, 808 (1970).

¶ 44.    Chief Justice Holden, writing for the Court in <u>Kerr</u>, further observed that because an "inference of compromise and misdirection undermines the entire verdict, the judgment for the plaintiff will be reversed and the cause remanded on all issues." <u>Id</u>. at 513, 266 A.2d at 808-09. The same inference arises here.

¶ 45.    Accordingly, I would reverse and remand for a new trial.  On these facts, the damages award cannot reasonably be understood as anything other than a monetary compromise resulting from confusion concerning the governing law.  Having concluded that plaintiff was entitled to recover, the jury should have been permitted to decide damages free from that confusion.  The verdict before us does not reflect such an unburdened determination.

_____
Chief Justice